257 N.J. Super. 255 (1992)
608 A.2d 404
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BRIAN STILL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1992.
Decided June 17, 1992.
Before Judges BILDER and STERN.
Robert L. Sloan, Assistant Deputy Public Defender, argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney; Robert L. Sloan, of counsel and on the brief).
*256 Teresa A. Blair, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Teresa A. Blair, of counsel and on the brief).
The opinion of the Court was delivered by STERN, J.A.D.
Defendant was convicted by a jury of sexual assault, N.J.S.A. 2C:14-2b (count one), and endangering the welfare of a child, N.J.S.A. 2C:24-4a (count two). He was sentenced to eight years, with four years before parole eligibility, on the sexual assault conviction and to a concurrent eighteen month term for endangering the welfare of a child. An aggregate $60.00 Violent Crimes Compensation Board penalty was also imposed.
On this appeal defendant argues:
POINT I INSUFFICIENT VOIR DIRE OF PROSPECTIVE JURORS DENIED DEFENDANT THE RIGHT TO A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. 1, PARS. 9, 10.
POINT II THE IMPROPER ADMISSION OF THE CHILD SEXUAL ASSAULT VICTIM'S STATEMENTS DENIED DEFENDANT THE RIGHT TO CONFRONT WITNESSES AND HIS RIGHT TO A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. 1, PARS. 9, 10.
POINT III THE ADMISSION OF EXPERT TESTIMONY CONCERNING CHILD BEHAVIOR WITHOUT ADEQUATE FOUNDATION DENIED DEFENDANT THE RIGHT TO A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. 1, PARS. 9, 10.
POINT IV IMPROPER COMMENT IN SUMMATION DENIED DEFENDANT THE RIGHT TO A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. I, PARS. 9, 10.
POINT V DEFENDANT'S SENTENCE WAS MANIFESTLY EXCESSIVE.
POINT VI DEFENDANT'S CONVICTION FOR ENDANGERING THE WELFARE OF A CHILD MUST BE MERGED WITH HIS CONVICTION FOR SEXUAL ASSAULT.
We affirm the convictions for sexual assault, but conclude that the endangering conviction must be merged therein.

I.
To understand defendant's contentions, we recite the essential *257 facts developed at trial.[1]
On January 13, 1989 L.H. took her children, four year old A. and two year old K. to A.H., their baby sitter. Defendant, A.H.'s grandson, lived with her. L.H. picked the children up later that evening. While walking home with the two boys, Ms. H. noticed that A. walked "stiff" and "slightly gap-legged." She asked A. why "he was walking slow like that." A. simply shrugged his shoulders. At home, A. continued to walk "strangely" and Ms. H. again questioned him about it. A. then told his mother that "he was hurting down below." Ms. H. asked A. "what's the problem" and he answered that defendant "had bit him on his worm." Ms. H. examined A.'s penis which "was like scratched ... the skin was broke [and it] had a little bit of blood on it."
Ms. H. "called the police" and A. was taken to Burlington County Memorial Hospital. Dr. Theodore M. Gilbert examined A. on the evening of January 13, 1989. Doctor Gilbert testified that prior to his examination A. "complained that someone had played with him and bit him." Dr. Gilbert recounted that "upon examination of the ... relevant area ... the genitalia, [he] found [A.] to be uncircumcised and a small abrasion was present on the tip of his penis." Over defense objection, Dr. Gilbert testified that the child's injury was "consistent" with what [A.] had told [him]," and Dr. Gilbert concluded "that there was definite evidence, considering what the young man complained of, of sexual abuse."
Edward M. Burns, an employee of the Division of Youth and Family Services (DYFS), was working "the response unit" on the evening of January 13, 1989 when he "received a call from [his] central office that ... the police had made a referral ... concerning the sexual assault." Shortly after Mr. Burns went to the Burlington County Hospital's Emergency Room and *258 spoke with Dr. Gilbert, Ms. H. and A. At first Burns made "small talk" with A. in the attempt "to build some sort of small relationship with him." Thereafter A. told Burns that "he had been over [defendant's] home and he was watching T.V. [a]nd that at that time [defendant] had bit and squeezed his worm." Burns learned from Ms. H. that "worm" was the word that A. used in reference to his penis.
Antonina Roller, an "intake worker" with DYFS, testified that she interviewed A. at his home on January 24, 1989. When Ms. Roller asked A. why he was at the hospital, "he told [her] that because [defendant] bit his worm."
Debbie Cross, an investigator with the Burlington County Prosecutor's office, was called by the defense. She interviewed A. on January 26, 1989 and videotaped the interview which was conducted at the prosecutor's office. In the interview A. recanted his earlier accusation of defendant. On cross-examination, Ms. Cross testified that it was "not uncommon for young children to recant" their accusations of sexual abuse. Ms. Cross was permitted to answer the question based upon her "experience."
Over defense counsel's objection the trial judge permitted A. to testify.[2] He testified that defendant "messed with my worm" and "bit[] it." A. demonstrated that "his worm" was "in the genitalia area," and he identified defendant in court.
A.H., defendant's grandmother, testified that she was in the house "all the time" on January 13, 1989, the day of the incident. She further testified that she remained in the living room and the kitchen area "all the time" A. and K. were in her home and that defendant was never alone with the children that evening.
*259 [At the request of the Appellate Division, Points II-V of its opinion, rejecting defendant's contentions addressed to the conviction, are deleted].

VI.
Defendant claims that the convictions must merge. The State notes, however, that our Supreme Court has held that sexual assault and endangering do not merge. See State v. Miller, 108 N.J. 112, 120-21, 527 A.2d 1362 (1987). The defendant, nevertheless, argues that Miller related to "parental endangering" whereas this case did not. We agree and order merger, at least in these circumstances where the record suggests no basis for the endangering conviction beyond the sexual assault. The parent in Miller there had a legal duty to his daughter. The Miller Court spoke of "the violation of the duty that a parent owes to a child," id. at 118-119, 527 A.2d 1362, and stated
[w]e do not denigrate the effect of a sexual assault on a child even when it is committed by someone she does not know. However, we think it is clear that the effect is not the same as when the abuse is committed by a parent whom the child depends on and trusts. [Id. at 120, 527 A.2d 1362].
The Court concluded "[i]n sum we hold that defendant's convictions for aggravated sexual assault and endangering the welfare of a child do not merge," id., but added, "[a]lthough both convictions are based on the same general conduct, the latter offense is also directed at the defendant's violation of his parental duty," which we note is a duty which transcends the isolated sexual act or acts. See also State v. D.R., 109 N.J. 348, 377-78, 537 A.2d 667 (1988) (applying the Miller "reasoning and holding" to merge endangering into an aggravated sexual assault by a grandfather, but stating that under the Miller rationale "the child endangerment conviction was `also directed at the defendant's violation of his parental duty,'" 109 N.J. at 377, 537 A.2d 667, quoting Miller, 108 N.J. at 121, 527 A.2d 1362). Here the defendant was not a parent and was not even the baby sitter herself, and no legal duty is asserted to have *260 been owed by him to the victim.[3] He was convicted of fourth  not third  degree endangering, and we merge the convictions even though the sentences were concurrent. See e.g., State v. Dillihay, 127 N.J. 42, 601 A.2d 1149 (1992); State v. Gonzalez, 123 N.J. 462, 588 A.2d 816 (1991).

VII.
The judgment of conviction for sexual assault is affirmed. The matter is remanded for a corrected judgment merging count two into count one.
NOTES
[1] At a pretrial Evid.R. 8 hearing, the trial judge ruled that the victim's statements to his mother and D.Y.F.S. workers were admissible.
[2] See State v. D.R., 109 N.J. 348, 369-371, 378, 537 A.2d 667 (1988); Evid.R. 63(33)(c).
[3] Further, there was no special verdict addressed to the basis for the endangering conviction beyond the sexual assault, and the record does not suggest an independent basis.